UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| CAPITAL CITY PUBLIC | ) | |
| CHARTER SCHOOL, | ) | Case No.: 21-10163-BAH |
| | ) | |
| Debtor | ) | |
| | ) | |
| *********************************************** | ) | |
| MICHAEL S. ASKENAIZER, TRUSTEE | ) | Adversary Pro No.: _____ |
| OF THE ESTATE OF CAPITAL CITY | ) | |
| PUBLIC CHARTER SCHOOL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLETTA ALICEA AND | ) | |
| STEPHANIE ALICEA, | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT**

NOW COMES Michael S. Askenaizer, Esq., Chapter 7 Trustee of the Estate of

Capital City Public Charter School (hereafter "Trustee" and/or "Plaintiff") and

complains against Caroletta Alicea (hereafter "CA" and/or "Defendant") and Stephanie

Alicea (hereafter "SA" and/or "Co-Defendant"), stating as follows:

**I.** **INTRODUCTION:**

1.  As otherwise stated in the paragraphs below, the Defendant and Co-

Defendant are hereafter collectively referred to as "Defendants."

2.  In this Complaint, the Trustee seeks to recover monies taken by, or otherwise

transferred to, the Defendants in violation of Federal and/or State Law.

1

3.  That the Chapter 7 filing of the Debtor entity was precipitated following an audit, which uncovered the fraudulent payment of Federal Grant monies taken from the New Hampshire State Department of Education ("NH DOE").  As a result of the Audit and subsequent hearings on the same before the NH DOE, the Debtor was ordered to repay funds but, the Debtor informed the NH DOE that it was unable to do so.

4.  That following the aforementioned audit which uncovered the fraudulent and improper receipt of Grant funds, a hearing on the New Hampshire Department of Justice's Petition to Dissolve the Debtor was scheduled in the Merrimack County Superior Court.

5.  That on the eve of the New Hampshire Department of Justice's Petition in the Merrimack County Superior Court, the Debtor agreed to dissolution.  This Chapter 7 proceeding was filed shortly thereafter.

## II.    PARTIES AND JURISDICTION:

6.  Michael S. Askenaizer, Esq., Trustee of the Chapter 7 Estate of the Debtor, is an individual with an office located at 29 Factory Street, Nashua, NH 03060.

7.  That Caroletta Alicea is an individual residing at 4 Stirrup Iron Road, Boscawen, New Hampshire 03303.  She is a Director on the Debtor's Board and the mother of Co-Defendant, Stephanie Alicea.  As a Director of the Debtor, CA is an "insider," as defined by Section 101 of the Bankruptcy Code.

8.  That Stephanie Alicea is an individual also residing at 4 Stirrup Iron Road, Boscawen, New Hampshire 03303.  She is the Daughter of the Defendant, Caroletta

Alicea.  She is also a Director, "Start-up Director," and "Head of School," for the Debtor. As defined by Section 101 of the Bankruptcy Code, SA is an "insider."

9.  That this Honorable Court has jurisdiction over this matter as a matter which arises under Title 11, pursuant to 28 USC 1334.

10.  That this Honorable Court is the proper venue pursuant to 28 USC 1409(a), in as much as this proceeding is a proceeding which relates to a case pending under Title 11 in the District of New Hampshire.

11.  That bankruptcy matters have been referred to this Honorable Court by the United States District Court, for the District of New Hampshire, pursuant to Local Rule 77.4.

12.  That all of the parties to this suit reside within the State of New Hampshire.

13.  That this matter is a "core" proceeding under 28 USC 157(b)(2)(A)(E)(H) and (O).

14.  That pursuant to AO 7008-1, the Trustee consents to the entry of Final Orders by this Honorable Court.

**III.** **ALLEGATIONS COMMON TO ALL COUNTS**:

**A.** **The Debtor and Origins**

15.  That on or about May 30, 2017, SA and CA formed Tomorrow's Child Foundation ("Tomorrow's Child").  A New Hampshire Domestic Non-Profit Corporation.  Both Defendants were listed as incorporators in the State filing, with the New Hampshire Secretary of State's Office, Corporate Records Division.

16.   That Articles of Incorporation drafted and signed by the Defendants indicate that the purpose of Tomorrow's Child was to facilitate the creation of a non-profit charter school.

17.   That subsequently and pursuant to New Hampshire RSA Chapter 194-B governing the creation of a chartered public school, SA, in her capacity as an officer of Tomorrow's Child, sought approval (from the New Hampshire State Board of Education), of the Debtor as an approved charter school.  Contemporaneously, SA also sought the approval of a contract with the New Hampshire State Board of Education, for this same purpose.

18.   That by letter dated February 13, 2018 and addressed to SA, the State Board of Education did notify Tomorrow's Child, that the operation of a charter school by the Debtor was approved.

19.   That under Articles of Incorporation filed with the New Hampshire Secretary of State's Office, Corporate Records Division, the Debtor was officially formed on February 22, 2018.

20.   That the principal office address of the Debtor was listed as the address of SA and she along with CA, are listed as incorporators of this non-profit corporation.

21.   That persons other than CA and SA are also listed as Directors of the Debtor. (According to statements given to the New Hampshire Department of Justice on or about January 28, 2021, other Directors on the Debtor's Board claimed that they were not experienced and that they were only Directors because they were trying to support their friends, CA and SA, in their vision for a charter school).

4

22.   That according to Article 2 of the Debtor's Articles of Agreement, it states that the purpose of the organization is:

> "... .to do all things reasonable and proper in the operation of a non-profit charter school within the state of New Hampshire and to deal generally therein.  The corporation is organized exclusively for educational purposes within the meaning of IRS Section 501(c)(3) of the Internal Revenue Code. . . ."

23.   That on February 8, 2018 SA entered into an Employment Agreement with the Debtor, to serve as the "Start-up Director" (hereafter "Director") between the period of March 2018 and August 2018.

24.   That the Employment Agreement set forth the compensation SA was to receive.

25.   That after the conclusion of the start-up period, SA was then to become the "Head of School" (hereafter "the Headmaster") beginning in September 2018 and continuing through June 30, 2022.  During this period SA also continued to serve as a Director on the Debtor's Board.  This same Employment Agreement provided that SA would be paid an annual ("start-up") salary of $30,000.00 between February 21, 2018 and July 1, 2018.  Thereafter, an annual (Headmaster) salary of $50,000.00 for the balance of the first year was to be paid.

26.   That the Debtor's Articles of Incorporation contain ethical restrictions prohibiting any "conflict of interest" or, "nepotism."  A "... .duty of loyalty. . . ." is specifically owed the Debtor.

27.   That subsequent to the above, on May 2, 2018 the Debtor also applied for registration with the New Hampshire Department of Justice, Charitable Trusts Unit

("Charitable Trusts Unit").  This was a separate and distinct application from the one made to the NH DOE.  Included in its application to the Charitable Trusts Unit, was a conflict of interest policy, which prohibited the Debtor's Board members from engaging in actions that give even the "appearance" of a conflict of interest.

28.  The Debtor's application to be a charitable corporation (under RSA Chapter 292) was approved by the Charitable Trusts Unit on May 21, 2018.

29.  The approval of the application sent to the Debtor, by the Charitable Trusts Unit, reminded the Debtor of its obligation to submit annual reports in accordance with RSA 7:28 and stated that the first annual report would be due on or before December 15, 2019.

**B.      The Application for a Federal Grant**

30.  That beginning on or about February 22, 2018, as part of the start-up, SA (on behalf of the Debtor) applied for a Federal statutory grant monies ("Grant") under the "Expanding Opportunity Through Quality Charter Schools Program."[1]  The Grant applied to the period of February 22, 2018 through July 31, 2019.

31.  That SA testified at the meeting mandated under Section 341 of the Bankruptcy Code, that she has spent multiple years in education (as well as other endeavors) and has written many grant proposals (over a period of years) and proposals for start-up businesses.

---

[1] The Grant is authorized under the Elementary and Secondary Education Act of 1965, as amended by the Every Student Succeeds Act 20 USC 7221-7221j (hereafter the "statutory framework").

32.  That CA testified at the meeting mandated under Section 341 of the Bankruptcy Code, that she has spent multiple years in education (and other business endeavors) and has written many grant proposals and proposals for start-up businesses (also spanning multiple years).

33.  That both SA and CA have testified to being experienced and knowledgeable in applying and managing grants, at the Section 341 Meeting.  They are estopped from denying the same.

34.  That the Debtor's Articles of Incorporation contains a "bio" which describes CA as having:

> " . . . .over thirty (30) years of experience in all levels of management, finance/accounting, and leadership. . . ..  Her educational interest and experience come in part from her sixteen (16) years on the Merrimack Valley School Board in which she has served as a the Policy Chair, and on the Finance, Negotiations and Student Ethics Committees."

35.  That the Debtor's Articles of Incorporation contains a "bio" which describes SA as an "educator" since 1999.

36.  That the NH DOE maintains a web based application known as the "Grants Management System" (hereafter the "Grants System").  SA's application for the Federal Grant to the Debtor was processed through this system.

37.  That SA completed all the forms and documents for the Grant proposal on behalf of the Debtor and she submitted the same to the NH DOE, seeking the Grant sub-award.

38.  That under the statutory framework, the Grant funds come from the Federal Government and are paid as an "award," to the NH DOE by the U.S. Department of Education.

39.  That under the statutory framework, the NH DOE thereafter distributes a "sub-award" to entities such as the Debtor.  In this case, the sub-award was made to the Debtor on April 30, 2018, retroactive to February 22, 2018.

40.  That the specified and proposed uses of Grant funds must be identified by the applicant and approved by the NH DOE prior to expenditures being made. Including the application submitted by SA for the Debtor, through the Grants System, in this case.

41.  That the funds transferred to those receiving sub-awards, limit the use and expenditure of Grant monies by recipients of sub-awards, including the Debtor.  37 CFR 76.

42.  Grant sub-awards, impose accounting and bookkeeping requirements on recipients, as specifically outlined in 2 CFR Part 200.

43.  That on or about April 30, 2018 SA was notified of a Grant to the Debtor in the amount of $223,000.00 (retroactive to the period of February 22, 2018).

44.  That under the same notice, SA was also reminded of the limitations on the uses of Grant money by the NH DOE, as part of the same sub-award.

45.  The same Notice of Approval of the Grant which was sent to SA, again reminded her of the record keeping requirements of 2 CFR Part 200.

46.  That according to the application submitted by SA in the Grants System, monies for the Grant were for matters including, as follows:

Staff and Teacher salaries;

Copying and office expenses;

Mandatory insurance including, but not limited to, worker's compensation insurance, unemployment insurance and health insurance;

Telephone services;

Computers, technology, library and media services;

Audio visual services;

Rent for the school's site to the school's landlord;

Website development and advertising;

School Administration expenses related to SA's role as Director and Head of School, in addition to accounting and bookkeeping expenses;

Professional association dues and expenses; and

Curriculum materials.

47.  That under the statutory framework, the above itemized uses of Grant funds were to be paid as reimbursements and NOT as an advance payment, in all instances.

**C.    The Debtor's Books and Records**

48.  That acting on behalf of the Debtor as Headmaster, (as well as Start-up Director) SA was primarily responsible for bookkeeping in Quickbooks on a day-to-day basis.

49. That acting on behalf of the Debtor, SA was also primarily responsible for keeping track of the Debtor's bank records, on a day-to-day basis.

50. That SA's duties as a Director and Headmaster included, in part, keeping the combined Quickbooks and the banking records accurate.

51. That CA had the duty as a Director on the Board of the Debtor, to supervise SA's bookkeeping. Notwithstanding said duty, CA testified at the Section 341 Meeting with the Trustee that she played no active role and had little knowledge of the Debtor's general operations, including the bookkeeping.

52. That CA had the duty as a Director on the Board of the Debtor, to supervise and review the Debtor's bank records. Notwithstanding said duty, CA testified at the Section 341 Meeting with the Trustee that she played no active role and had little knowledge of the Debtor's operations, including the banking.

53. That CA is experienced in supervising school administrators, having served for many years on the Merrimack Valley School Board.

54. That for the period beginning February 22, 2018 and continuing through July 8, 2019, the Debtor's bank records document deposits and withdrawals.

55. That the Debtor also had a QuickBooks program for the period February 22, 2018 through July 8, 2019.

56. That the SA's bookkeeping and record keeping was not accurate and/or contemporaneous.

57. That the SA's record keeping did not comply with the Grant requirements, mandated under 2 CFR Part 200.

10

58. That SA's record keeping in Quickbooks in many instances was contradicted by the Debtor's bank records.

59. That notwithstanding the inaccurate and erroneous bookkeeping records, in order to receive reimbursements from the New Hampshire State Department of Education, SA (through the NH DOE Grant's System) did electronically apply for the reimbursements as broken down on Exhibit 1.

60. That with each request for reimbursement through the electronic Grant System, SA represented that the Debtor's funds had been expended for the particular uses she had listed in the Grant Application, and as limited in the Grant Sub-Award Notification (which also listed the records and accounting requirements of 2 CFR Part 200).

61. That SA exclusively submitted all requests for reimbursement funds available through the Grant System, as she admitted while testifying in the Section 341 meeting with the Trustee.

62. That as part of each and every separate application for reimbursement through the Grants System, SA represented that the reimbursement funds were for monies expended for the specific uses set forth in the Grant application, she had submitted for the Debtor.

### D.   Misrepresentations in Obtaining Grant Funds

63. That during the period of May 7, 2018 through July 8, 2019, SA submitted a total of twelve (12) separate requests through the Grants System.  Confirming with each

and every request that the reimbursement was for the approved uses in the "GRANT

SUB-AWARD NOTIFICATION."

62.   That for each and every reimbursement request through the Grant System,

SA knew that money had been taken from the Debtor and used for matters which were

personal to herself and/or her mother.

63.   That for each and every Grant reimbursement request, notwithstanding her

representation, SA knew that the reimbursements she requested were false and a

misrepresentation of the actual expenditures of the Debtor's funds.

64.   That the Debtor's books and records (as kept by SA) were largely incomplete

and inaccurate and SA knew the same, when she falsely confirmed each and every

request for Grant reimbursement in the Grants System from NH DOE.

65.   That SA had fraudulently paid for such personal expenses (including but not

limited to items) such as:

Uber rides;
Wendy's;
Burger King;
Gym Membership Fees;
Convenience stores;
Pizza;
Restaurants;
T-Mobile;
I-Tunes;
ATM Cash; and
Repayment of "loans" without any documentation.

66.   That the above list of personal expenses (of SA paid with the Debtor's funds

and subsequently reimbursed to the Debtor as Grant funds) is not a complete list and

the complete items described in the attached Audit (Exhibit 2) are incorporated in this Complaint by way of reference.

67.  That funds belonging to the Debtor were also transferred to CA.

68.  That monies transferred from the Debtor to CA were also reimbursed to the Debtor with NH DOE Grant funds.

69.  That the monies transferred to CA were either insufficiently documented or, completely undocumented in the Debtor's books and records.

70.  That CA knew there was insufficient records, because of her self-described experience and qualifications, yet CA had her daughter (SA) transfer funds from the Debtor to CA personally.

71.  That CA, by taking the Debtor's funds without proper documentation, was self- dealing and said conflict of interest is in direct violation of the records keeping requirements (of 2 CFR Part 200, requiring specific record keeping requirements).  She is estopped from denying the same because of her testimony at the Section 341 meeting with the Trustee about her extensive experience handling grant monies.

72.  That CA knew, or should have known in her capacity as Director, that her daughter (SA the Headmaster) was not keeping accurate business records of CA's "loans."

73.  That CA, because of her unrelated operation of another business, as well as, her experience with finances on the Merrimack County School Board (and her other grant writing expertise) knew that her claim of purported "loans" to the Debtor, were

inadequately documented and that payment of Debtor funds (facilitated by her Daughter, SA) was an unethical and nepotistic conflict of interest.

74.  That the Defendant's activities in taking the Debtor's funds without proper business records and then applying for Grant reimbursement under false pretenses, is part of a common plan or scheme by SA and CA to enrich them both personally.

### E.    An Audit Reveals Malfeasance

75.  Subsequent to all of the above, after a subrecipient monitoring visit required by 2 CFR 200 conducted by the NH DOE resulted in the Debtor being unable to provide documentation (supporting the disbursed Grant money), the NH DOE required the Debtor to undergo an independent audit.

76.  That the Debtor selected the accounting firm of Plodzik & Sanderson, P.A. (the "Auditor") to conduct a review of the use of Grant money during the period of February 22, 2018 through July 31, 2019.

77.  That the Auditor (a Certified Public Accountant) found substantial misfeasance and malfeasance in the operation of the Debtor.  The results of the Audit are attached as Exhibit 2 (hereafter "Audit") and the results are incorporated in this Complaint by way of reference.

78.  That SA's Grant reimbursement requests to the NH DOE in the Grants System did not correlate to actual obligations incurred, or activity recorded in the general ledger kept in Quickbooks, according to the Audit.  (See Exhibit 2, Page 1).

79. That numerous items recorded by SA in the Debtor's QuickBooks ledger did not match the activity in the Debtor's bank accounts, according to the Audit. (See Exhibit 2, Page 1).

80. That because of the substantial inaccuracy in the Debtor's books, the Auditor relied on the disbursement activity from the Debtor's banking records, according to the Audit. (See Exhibit 2, Page 1.)

81. That many items in the Debtor's bank records were not entered into Quickbooks at all, according to the Audit. (See Exhibit 2, Page 1).

82. That the Audit identified extensive cash withdrawals made by use of a debit card. (See Exhibit 2, Page 1).

83. That the Audit found numerous instances of undocumented cash teller withdrawals. (See Exhibit 2, Page 1).

84. That the Audit uncovered multiple transfers of funds out of the Debtor's bank account into SA's bank accounts. (See Exhibit 2, Page 1).

85. That the Audit uncovered multiple transfers of funds out of the Debtor's bank accounts and into CA's bank accounts. (See Exhibit 2, Page 1).

86. That the Audit uncovered numerous instances when payments were made out of the Debtor's bank account, with no document backing up the charge, or a valid reason for payment. (See Exhibit 2, Page 1).

87. That the Audit also found repayment of "loans from officers" in the QuickBooks records, for which there was no documentation of the "loan," or even any record of what the money was used for. (See Exhibit 2, Pages 3 and 4).

15

88.  That the Audit sets forth substantial non-compliance with the records keeping requirements under 2 CFR Section 200, by SA as Headmaster and by CA as Director, with a duty to supervise SA.

89.  That the audit uncovered the substantial absence of ordinary business accounting "controls" to help prevent fraud, as would be used by any reasonable business.

90.  That the Audit details substantial monies taken by SA for her personal use and/or benefit from the Debtor's bank accounts, which were subsequently paid by the Grant reimbursements from NH DOE.

91.  That the Audit details substantial monies taken by CA for her personal use and/or benefit from the Debtor's bank accounts, which were subsequently paid by the Grant reimbursements from NH DOE.

92.  That the misfeasance and malfeasance of the Audit are too extensive for identification in the body of this Complaint and hence, the Audit is attached to this Complaint and incorporated herein by way of reference.

93.  That the Audit identified $153,837.98 of the $223,000.00 total of Grant money awarded, had been taken by CA and SA.

**F.  The State of New Hampshire Department of Justice, Charitable Trust Unit's Investigation**

94.  That while the NH DOE was investigating the above issues with the improper use of the Debtor's funds and misrepresentations in Grant reimbursements, the Charitable Trust Unit, was also investigating the Debtor.

16

95. That the Debtor's Corporate Annual Report was due on December 15, 2019.

96. That subsequent to the commencement of said investigation, an overdue Annual Report dated February 3, 2021, was submitted late by the Debtor (more than a year overdue).

97. That the Annual Report submitted to the Charitable Trust Unit purportedly contained the signature of CA and appeared to be notarized under pain and penalty of perjury.

98. That the Annual Report contains a question that asks whether any officer, director or trustee, or a member of his/her family obtained a pecuniary benefit from the organization and the answer in the Debtor's Annual Report was, "no."

99. That the Debtor's Annual Report was notarized, as though it had been signed.

100. That in fact, CA did not sign the Annual Report and a rubber stamp, with CA's name on it, was instead applied to the document submitted to the Charitable Trust's Unit.

101. That CA subsequently claimed to the New Hampshire Department of Justice, that she did not sign the Annual Report and that her name had been affixed to the Annual Report by way of a stamp, without her approval.

102. That at the Section 341 Meeting of December 2, 2021, CA, denied any and all knowledge of the stamp with her name on it and/or the filing of any report utilizing any stamp, as referenced above.

103.  That CA's testimony about the stamp, at the Section 341 Meeting with the Trustee, is in direct contradiction of her statements to the New Hampshire Department of Justice about the same.

104.  That as a result of the attached Audit, the NH DOE sent a demand for reimbursement of $153,837.98, for monies taken falsely and in violation of the Grant's requirements and limitations.

105.  That in response to the demand, SA requested a hearing before the NH DOE, on repayment of the above.

106.  That CA and SA admitted to some of the malfeasance by paying NH DOE $25,000.00 toward the above-referenced demand.  Following said hearing, the NH DOE affirmed the requirement that the Debtor repay the balance of $123,837.98 before it could resume classes.  However, the Debtor admitted it was not able to pay this sum back.

107.  That no specific breakdown accompanied SA's and/or CA's partial repayment of $25,000.00 to NH DOE.

108.  That after receiving the audit, the State of New Hampshire also scheduled a hearing on revoking the Debtor's charter.

109.  That in order to insure that the Debtor would cease operation, the New Hampshire Attorney General, Charitable Trust Division, required Tomorrow's Child Foundation, the Debtor, as well as, SA and CA to all sign a "Assurance of Discontinuance", pursuant to NH RSA 7:28-f (the "Assurance").

18

110.  That the Assurance required SA and CA to pay a fine, for their violation of their fiduciary responsibilities to the Debtor.

111.  That the Assurance was filed as part of a proceeding in the Merrimack County Superior Court.  It was approved by that Court.

112.  That this Chapter 7 proceeding was filed shortly thereafter.

## IV.   CLAIMS

### A.   COUNT I – FRAUDULENT TRANSFER – CAROLETTA ALICEA (11 USC 544(b) and RSA 545-A:4(I)(a))

113.  That all of the facts, circumstances and allegations set forth in the paragraphs above, are herein incorporated as are all attached Exhibits.

114.  That pursuant to Section 544(b) of the Bankruptcy Code, the Trustee may bring a fraudulent transfer action, in the Bankruptcy Code, under applicable State law.

115.  That pursuant to Section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover "value" on a transfer which is avoided under Section 544 of the Bankruptcy Code.

116.  That the State of New Hampshire has codified and adopted the Uniform Fraudulent Transfers Act, RSA Chapter 545-A.

117.  That pursuant to 11 USC 544(a), the Trustee is a lien creditor of the Debtor.

118.  That pursuant to NH RSA 545-A:4(I):

> "A transfer made. . . .by a debtor is fraudulent as to a creditor,. . . .if the debtor made the transfer. . . .(a)[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor. . . ."

119.  That as outlined in the Audit attached to this Complaint, CA, on multiple occasions, took sums of money which were the property of the Debtor and utilized the

same monies for her own personal use, in violation of her fiduciary responsibilities, as a Director.

120.  That CA is an insider to the Debtor, as that term is described in RSA 545-A:1.

121.  That CA has years of experience in running a business and overseeing the finances and accounting of schools.

122.  That CA knows and understands the importance of documenting and recording claims for reimbursement in general and in particular, the need to document "personal loans" to any business entity or school.

123.  That CA instructed SA (her daughter, house-mate, and subordinate in the chain of command) to transfer funds from the Debtor to CA personally and individually.  Later and after the fact, she falsely tried to claim the transferred funds were the repayment of "loans" notwithstanding the absence of any reasonable documentation necessary to support the same.

124.  That in addition to there being an absence of documentation to support the "loans," there is no documentation to show how any purported "loan" money was spent.

125.  That in addition to the absence of proper loan documentation, there are no Board Minutes showing the approval of any "loan" to the Debtor by CA or, any minutes of a Board meeting showing the approval of the repayment of the purported "loan."

20

126.   That CA knew she lacked the required documentation, proof of purpose, and proof of Board approval (in violation of the Debtor's conflict of interest policy) when she had SA transfer funds out of the Debtor's bank account and into CA's personal account.

127.   That CA intentionally engaged in this activity repeatedly, as outlined in the Audit attached to this Complaint as an Exhibit.

128.   That CA intentionally took the Debtor's funds and paid them to herself, which in conjunction with the funds taken by SA, rendered the Debtor insolvent and which resulted in the Debtor's bankruptcy when the Grant money could not be repaid to NH DOE in full.

129.   That CA along with SA were jointly engaged in a fraudulent plan or scheme to wrongfully take funds of the Debtor, to the detriment of NH DOE and the Debtor's creditors.

130.   That the funds taken by CA were ultra vires and unapproved by the other Directors on the Board of the Debtor, according to statements made to the Attorney for the New Hampshire Department of Justice, Charitable Trust's Unit.

131.   That by co-paying a $25,000.00 reimbursement to the NH DOE for funds wrongfully taken through the reimbursement process, CA has admitted, in part, to the fraud.

132.   That the Trustee is entitled to Judgment against CA, under RSA 545-A:4(I)(a) for the fraudulent transfer of funds belonging to the Debtor in the remaining amount of $128,837.98.

21

**B.    COUNT II – FRAUDULENT TRANSFER – STEPHANIE ALICEA (11 USC 544(b) and RSA 545-A:4(I)(a))**

133.  That all of the facts, circumstances and allegations set forth in the paragraphs above, are herein incorporated, as are all attached Exhibits.

134.  That pursuant to Section 544(b) of the Bankruptcy Code, the Trustee may bring a fraudulent transfer action, in the Bankruptcy Code, under applicable State law.

135.  That the Trustee is a lien creditor under Section 544(a) of the Bankruptcy Code.

136.  That pursuant to Section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover "value" on a transfer which is avoided under Section 544 of the Bankruptcy Code.

137.  That the State of New Hampshire has codified and adopted the Uniform Fraudulent Transfers Act, RSA Chapter 545-A.

138.  That pursuant to NH RSA 545-A:4(I):

> "A transfer made. . . .by a debtor is fraudulent as to a creditor,. . . .if the debtor made the transfer. . . .(a)[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor. . . ."

139.  That as outlined in the Audit attached to this Complaint, SA, on multiple occasions, intentionally took sums of money which were the property of the Bankruptcy Debtor and utilized the same monies for her own personal use, in violation of her fiduciary responsibilities, both as a Director of the Debtor and as the School Headmaster (and/or in her role as the start-up Director).

140.   That SA is an "insider" to the Debtor, as that term is described in RSA 545-A:1.

141.   That SA knowingly took the Debtor's money, as outlined in the Audit, and knowingly attempted to conceal the same through the NH DOE's Grant System. Wherein she fraudulently sought reimbursement for the monies she had personally taken from the Debtor.

142.   That SA intentionally attempted to conceal her wrongdoing by maintaining the Quickbooks records indicating funds expended in one fashion when in fact, the banking records contradict what SA entered into the Debtor's Quickbooks records.

143.   That SA applied for Grant reimbursements fraudulently and knowingly claiming the reimbursements were for a proper purpose. When in fact, the reimbursements were for the improper and personal purposes of SA and her mother, CA.

144.   That the Debtor was rendered insolvent by virtue of SA taking its assets for her own personal use, in a common fraudulent plan or scheme with her mother, to the detriment of the Debtor's creditors.  Including but not limited to, NH DOE and the Trustee.

145.   That by co-paying $25,000.00 reimbursement to the NH DOE for funds fraudulently taken through the Grant reimbursement process, SA has admitted, in part, to her fraudulent activities involving Grant reimbursements.

146.  That the Trustee is entitled to Judgment against SA, under RSA 545-A:4(I)(a) for fraudulent transfer of funds belonging to the Debtor, in the remaining amount of $128,837.98.

## C.   COUNT III – FRAUDULENT TRANSFER – CAROLETTA ALICEA (11 USC 544(b) and RSA 545-A:4(I(b))

147.  That all facts, circumstances and statements of law, set forth of above, are herein incorporated.

148.  That pursuant to Section 544(b) of the Bankruptcy Code, the Trustee may bring a fraudulent transfer action, in the Bankruptcy Court, under applicable State law.

149.  That Section 550(a) of the Bankruptcy Code provides authority for the Trustee to recover "value" on a transfer which is avoided under Section 544 of the Bankruptcy Code.

150.  That pursuant to 11 USC 544(a) the Trustee is a lien creditor of the Debtor. That pursuant to NH RSA 545-A:4(I)(b):

> "A transfer made. . . .by a debtor is fraudulent as to a creditor,. . . .if the debtor made the transfer. . . .(b)[w]ithout receiving a reasonably equivalent value in exchange for the transfer. . . .and the debtor: (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

151.  That the funds transferred out of the Debtor's bank account and into CA's personal bank account, were not for reasonably equivalent value for the reasons described above, in this Complaint.

24

152.  That for the reasons outlined above, the Debtor was rendered insolvent and filed this bankruptcy, because of the fraudulent scheme of CA and SA.  Transfers to CA were at a time when the remaining assets of the Debtor in relation to the "business" the Debtor was about to engage in as a non-profit charter school.

153.  That because of her experience as a business person and also as a member of a local School Board, CA believed, or reasonably should have believed, the Debtor would incur debts beyond the Debtor's ability to pay those debts, which is why the Debtor sought Grant <u>reimbursement</u> from the NH DOE.

154.  That CA knew or should have known that without prior documentation for her "loans," that any transfer of funds to her, was improper and a violation of the duties she owed to the Debtor in violation of both Federal and State law.

155.  That for the reasons set forth above, CA knew or should have known, (because of her responsibilities, duties, and experience) that the transfer of the Debtor's funds to herself, without any Grant reimbursements would leave the Debtor insolvent.

156.  That by co-paying $25,000.00 to the NH DOE for funds wrongfully taken through the reimbursement process, CA has admitted, in part, that the transfers to her were in violation of RSA 545-A:4(I)(b).

157.  That the Trustee is entitled to Judgment against CA, under RSA 545-A:4(I)(b) for fraudulent transfer of funds belonging to the Debtor, in the remaining amount of $128,837.98.

### D.   COUNT IV – FRAUDULENT TRANSFER – STEPHANIE ALICEA (11 USC 544(b) and RSA 545-A:4(I)(b)

158.   That all facts, circumstances and statements of law, set forth of above, are herein incorporated.

159.   That pursuant to Section 544(b) of the Bankruptcy Code, the Trustee may bring a fraudulent transfer action, in the Bankruptcy Court, under applicable State law.

160.   That the Trustee is a lien creditor under Section 544(a) of the Bankruptcy Code.   That Section 550(a) of the Bankruptcy Code provides authority for the Trustee to recover "value" on a transfer which is avoided under Section 544 of the Bankruptcy Code.

161.   That pursuant to NH RSA 545-A:4(I)(b):

> "A transfer made. . . .by a debtor is fraudulent as to a creditor,. . . .if the debtor made the transfer. . . .(b)[w]ithout receiving a reasonably equivalent value in exchange for the transfer. . . .and the debtor: (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

162.   That as a Director, Start-Up Coordinator and Headmaster of the Debtor, SA is an "insider" as that term is defined under RSA 545-A:1.

162.   That as outlined in the Audit attached to this Complaint, SA, on multiple occasions, took sums of money which were the property of the Bankruptcy Debtor and utilized the same monies for her own personal use.   In violation of her fiduciary responsibilities both as a Director of the Debtor and as the School Headmaster, or in her role as the Start-Up Director.

26

163.   That SA took the Debtor's money, as outlined in the Audit, and thereafter attempted to conceal the same through the NH DOE's Grant System.  Wherein she sought reimbursement for the monies she had fraudulently taken from the Debtor.

164.   That SA knowingly attempted to conceal her fraud by maintaining the Quickbooks records indicating funds expended in one fashion when in fact, the banking records indicated a contrary use of the Debtor's funds.

165.   That the funds outlined in the Audit were not taken for reasonably equivalent value by SA.  Salary is not paid, by example, for intermittent uber rides and directly to Wendy's.  There is nothing in the Minutes of the Meeting of the Board of Directors authorizing such a method of compensation.  The funds taken by SA left insufficient assets for the remaining business of the non-profit Debtor in running a charter school and/or, reasonably should have been understood as leaving the Debtor unable to pay its bills as they came due.

166.   That the funds taken by SA for her own personal use were not approved by the Board prior to SA taking said funds and were in direct violation of the Debtor's conflict of interest policy.

167.   That SA knew, or should have known as the person most in touch with the Debtor's day-to-day finances, that the Debtor would be rendered insolvent by the absence of funds she had taken, which is why she applied for Grant money after taking the Debtor's funds for her personal use.

168.   That the Debtor was rendered insolvent by virtue of SA taking its assets for her own personal use.

27

169.  That the value of the funds taken by SA was unreasonable given her salary and benefits as provided by the Debtor in her Employment Agreement.

170.  That further, SA co-paying $25,000.00 to the NH DOE for funds wrongfully taken through the reimbursement process, has admitted to the fraudulent scheme of taking the Debtor's funds for personal use.

171.  That the Trustee is entitled to Judgment against SA, under RSA 545-A:4(I)(b) for fraudulent transfer of funds belonging to the Debtor, in the remaining amount of $128,837.98.

**E.    COUNT V – COMMON LAW FRAUD – CAROLETTA ALICEA**

172.  That all of the facts, circumstances and/or law set forth in the paragraphs above, are herein incorporated.

173.  That New Hampshire recognizes Common Law Fraud.  <u>Alexander v. Fujitsu Business Communications Systems</u>, 818 F.Supp. 462 (D. NH. 1993).

> "The elements of fraud or deceit are (1) the defendant misrepresented a material fact to the plaintiff, knowing it to be false; (2) the defendant did so with fraudulent intent that the plaintiff act on it; and (3) that the plaintiff without knowledge of its falsity, detrimentally relied on the misrepresentation.  Under New Hampshire law, a representation is fraudulent if made with knowledge of its falsity or with conscious indifference to its truth, and if the false statement was made with the purpose or with the intention of causing another to act on it.  <u>Id</u>. at 467.

174.  That CA holds fiduciary responsibilities to the Debtor, as she is a Director and Supervisor of the Debtor's Headmaster (her daughter and Co-Defendant, SA).

175.  That CA is an experienced business owner and, by her own admission, had

multiple years overseeing school finances and school bookkeeping, in her capacity as a School Board Member of the Merrimack Valley School District.

176. That CA has experience as a business person, operating a private business dealing with home care, which requires accurate bookkeeping and accounting in accordance with insurance and/or IRS requirements for the same.

177. That CA took the Debtor's monies, misrepresenting that the funds taken were repayment for "loans" when in fact, there was insufficient documentation in the Debtor's books and records to support the repayment of any "loan."

178. That CA knew there was improper documentation for any "loan" she claims.

179. That notwithstanding her knowledge and fiduciary responsibilities, CA was "consciously indifferent" (Id. at 467) to the truth, completeness and/or accuracy of the Debtor's books and records, for any "loan repayment."  CA intentionally disregarded her fiduciary duties by allowing the Debtor to have incomplete and inaccurate records, as maintained by SA.  As she testified at the Section 341 Meeting with the Trustee, she was unaware of the content of Quickbooks and banking records.

180. That CA further compounded her own "conscious indifference" by failing to properly document any purported "loans" from herself, to the Debtor, and by then directing her daughter, SA, to repay the purported "loans" from school funds (with the intent that SA would, in fact, pay her the monies which would, thereafter, be reimbursed from the Grant funds paid by NH DOE").

181. That SA did, in fact, act on CA's instructions and did transfer funds from the Debtor's bank accounts to CA. Notwithstanding the complete failure to accurately keep the same on Quickbooks and/or to have proper loan documentation which would allow a transfer of the funds and/or to permit a grant reimbursement from the NH DOE.

182. That CA lacked any approval of the Board to pay herself for undocumented loans, in violation of the Debtor's conflict of interest policy in the Articles of Incorporation. There is no record of any such approval in the Minutes of any monthly Board Meeting.

183. That the Trustee is entitled to a Judgment, for common law fraud, in the amount of $128,837.98

F. **COUNT VI – COMMON LAW FRAUD – STEPHANIE ALICEA**

184. That all the facts, circumstances, allegations and references to the law, as more particularly set forth, are herein incorporated.

185. That the State of New Hampshire recognizes claims for Common Law Fraud and/or "misrepresentation." <u>Alexander v. Fujitsu Business Communications Systems</u>, 818 F.Supp. 462 (D. NH. 1993).

> "The elements of fraud or deceit are (1) the defendant misrepresented a material fact to the plaintiff, knowing it to be false; (2) the defendant did so with fraudulent intent that the plaintiff act on it; and (3) that the plaintiff without knowledge of its falsity, detrimentally relied on the misrepresentation. Under New Hampshire law, a representation is fraudulent if made with knowledge of its falsity or with conscious indifference to its truth, and if the false statement was made with the purpose or with the intention of causing another to act on it. <u>Id</u>. at 467.

186.  That as a Director and Headmaster of the Debtor, SA was a fiduciary to the Debtor.

187.  That SA had a duty to keep accurate books and records of the Debtor's finances and accounts and she breached that duty, knowingly, by intentionally not keeping accurate books and records as otherwise described in the Audit.  Which is attached to this Complaint as an Exhibit and is incorporated in this Count by way of reference.

188.  That notwithstanding SA's intentional failure to keep the books and records as is required under the Code of Federal Regulations cited above, she intentionally and knowingly applied for grant distributions, from NH DOE.  SA knowingly alleged uses, which were approved as part of the grant application, as a basis for the reimbursement. When in fact, she knew that with each and every one of the twelve (12) reimbursement requests, she was making false statements.

189.  That SA further made false statements in the entries in the Quickbooks records, as the entries did not match the bank statements, both of which SA supervised and maintained.

190.  That SA's false and misleading grant reimbursement requests where, in fact, relied upon by the NH DOE.  Which had no prior knowledge of SA's false business records and false Grant reimbursement requests, which did not match the Debtor's books, records, and bank statement.

191.  That SA's malfeasance was unknown to the Debtor's Board of Directors, aside from her Mother, CA.

192.  That the Trustee is entitled to a Judgment for Common Law Fraud in the amount of $128,837.98.

G.     **COUNT VII – CAROLETTA ALICEA AND STEPHANIE ALICEA**
       **(Breach of the Fiduciary Duty of Loyalty and Self-Dealing)**

193.  That both CA and SA as Directors and Corporate Officers held a fiduciary duty to avoid taking funds, they were not entitled to take, without the proper documentation, and/or taking amounts over and above what they were entitled to receive.  In re Felt, 371 BR 589 (Bktcy. NH 2007); Hansen v. Sentry Insurance, 756 F.3d. 53 (1st Cir. 2014).

194.  That pursuant to RSA 292:2 (V-a) as directors and/or officers of the Debtor, SA and CA had a fiduciary duty to avoid:

-    Any breach of the directors or officers duty of loyalty to the corporation or its shareholders.

-    Acts or omissions which are not in good faith or which involve intentional misconduct or a knowing violation of law.

-    Any transaction from which the director, officer, or both, derived an improper personal benefit.

195.  That further, as an approved charitable corporation, SA and CA also had a duty to avoid "self-dealing" under NH RSA 292:2-a (incorporating Section 4941(d) of the Internal Revenue Code of 1954).

196.  That pursuant to 26 USC 4941(d) "self-dealing" is defined as ". . . .any direct or indirect – (A) sale or exchange. . . .between a private foundation and a disqualified

person; (B) lending of money or other extension of credit between a private foundation and a disqualified person; (C) furnishing of goods, services, or facilities between a private foundation and a disqualified person; (D) payment of compensation (or payment or reimbursement of expenses) by a private foundation to a disqualified person; (E) transfer to or used by or for the benefit of, a disqualified person of the income or assets of a private foundation. . . ."

197.  That pursuant to 28 USC 4958(f), SA and CA are "disqualified persons."

198.  That both CA and SA had fiduciary duties to maintain accurate books and records as required under 2 CFR Part 200 and they failed to maintain a modicum of reasonable bookkeeping (and/or accounting controls), so as to match up to either the Debtor's bank accounts or, the grant reimbursement requests through the NH DOE Grants Management System.

199.  Even under the Debtor's own Articles of Incorporation and By-Laws, CA and SA had a duty to avoid a "conflict of interest" and "nepotism."

200.  That notwithstanding their fiduciary duties under New Hampshire and Federal Law (referenced above), CA and SA each breached their duties, by engaging in rampant self-dealing combined with their joint failure to ensure proper record keeping, as the Directors of a charitable corporation.

201.  That notwithstanding their other duties under New Hampshire and Federal Law referenced above, CA and SA also breached their duties by engaging in rampant self-dealing, in violation of their duties of loyalty and fiduciary responsibilities when they submitted requests for Grant reimbursements to the NH DOE.  As a result of CA's

and SA's actions, the Debtor was dissolved in a proceeding in the Merrimack County Superior Court when the funds they had taken could not be repaid.

202. That under Section 4941(d) of the Internal Revenue Code, managers and trustees of a charitable foundation are liable for acts of self-dealing:

- when documentation is lacking;

- whether or not they are aware at the time of the acts, that they were illegally self-dealing;

- and when the absence of records combined with sporadic payments, in differing amounts does not constitute allowable "compensation." Kermit Fischer Foundation, et. al. v. Commissioner, 59 T.C.M. (1990).

203. That as a proximate cause of their self-dealing and inaccurate and false bookkeeping, and false statements to NH DOE, the Debtor was proximately caused damage by CA's and SA's personally profiting to the detriment of the Debtor, the State of New Hampshire, the Federal Government and all of the Debtor's creditors.

204. That as a result of the above, the Debtor and its creditors have been damaged, including the Trustee as a bona fide purchaser for value, as well as, a lien creditor, under Section 550.

205. That the Trustee is entitled to Judgment on the breach of CA's and SA's fiduciary duties to the Debtor, in the amount of $128,837.98.

H.     **COUNT VIII – CAROLETTA ALICEA AND STEPHANIE ALICEA**
       **(Restitution/Piercing the Corporate Veil)**

206.  That the facts, allegations and circumstances as more particularly set forth above in this Complaint, are herein incorporated.

207.  That New Hampshire Courts do not hesitate to disregard the fiction of a corporation, when the circumstances would lead to an inequitable result.  Terren v. Butler, 134 NH 635 (1991).  See also United States v. Kattar, 81 F.2d. 262 at 275 (D. N.H. 1999), citing Terren.

208.  That "substantial depletion of corporate assets" constitutes grounds for disregarding the corporate veil under the Alter Ego Doctrine.  Terren at 72.

209.  "The key factor for piercing the corporate veil, however, is the conduct of the shareholders."  Bielagus v. Emery of NH Corp., 149 NH 635 at 643 (2003).

210.  That as outlined in the Audit, CA and SA disregarded the Debtor as a separate corporate person, on a widespread and multiple basis.

211.  That the level of monies taken as well as the number of individual charges are both substantial and constitutes a statutory fraud under RSA 545-A, by both SA and CA, as otherwise described above.

212.  That in addition, the monies taken by CA and SA constitute a common law fraud and/or breach of fiduciary duty, as also otherwise plead in the Counts set forth above.

213.  That CA and SA transferred substantial assets of the Debtor, to themselves personally, in violation of the Alter Ego Doctrine.  By fraudulently attempting to

characterize the transfers as one thing in the Debtor's business records when, the Debtor's bank records indicated otherwise.

214. That CA fraudulently attempted to characterize monies transferred to her as repayment of "loans"; without documentation to support the same; without prior approval of other Directors on the Board and/or knowledge of the Directors on the Board; thereby ignoring the corporate person.

215. That SA's fraudulent used the Debtor's debit card to take cash withdrawal and to otherwise use the Debtor's debit card to download iTunes, obtain Uber rides, pizza, Wendy's purchases, and other transfers, for her personal benefit, calling the same "salary" during her conversations with the auditors, NH DOE and the Charitable Trust Unit. The details of which are in the Audit, incorporated in this Paragraph by way of reference.

216. That in this case, given all of the facts objectively viewed, the Trustee should be awarded a Judgment and equitable relief in the form of restitution, for violation of the Alter Ego Doctrine, in the amount of $128,837.98.

<div style="margin-left:40%">

Respectfully Submitted
MICHAEL A. ASKENAIZER, TRUSTEE
By His Attorney

</div>

Dated:  January 26, 2022          /s/Daniel C. Proctor, Esq.
                                 Daniel C. Proctor, Esq., #02124
                                 P.O. Box 3544
                                 Concord, NH 03302-3544
                                 603-228-8226
                                 dan@proctorlawoffices.com